Ben UNDERNEHR *v.* Shirley SANDLIN, Benton County
Assessor, and Charlie Daniels, Commissioner of State
Lands.

CA 90-469                                    816 S.W.2d 635

Court of Appeals of Arkansas
Division I
Opinion delivered October 9, 1991
[Supplemental Opinion on Denial of Rehearing
January 15, 1992.]

*Mashburn & Taylor*, by: *Timothy L. Brooks*, for appellant.

MELVIN MAYFIELD, Judge. Appellant Ben Undernehr appeals from a decision of the Benton County Chancery Court dismissing his "Petition to Reform Deed" against Shirley Sandlin, Benton County Assessor and Charlie Daniels, Commissioner of State Lands. We find no error and affirm.

The evidence shows that on May 17, 1988, appellant purchased a parcel of land in the City of Bentonville, Benton County, Arkansas, at a tax forfeiture sale conducted by the State Land Commissioner, Charlie Daniels. The Limited Warranty Deed issued to him contained the following description:

> Pt. Lot 2 Beg 50' W NE/C E60' S247½' W30' N110' S247½' W30' N110' Etc. Dickson

A close examination of this description reveals that it is incomplete and does not "close." A search of the records in the county assessor's office revealed an error, which was made in 1978, when the assessor's office was converting to computers. This resulted in certain property being double taxed. The taxes on that property, which was owned by Dynamic Enterprises, were not delinquent. This was a larger parcel that included the smaller parcel Underhehr thought he had purchased.

This suit was brought by Dynamic Enterprises against Undernehr to have his tax deed declared void and title to the property quieted in Dynamic. The trial court found for Dynamic Enterprises and ordered Undernehr to quitclaim his interest in the property to Dynamic. The court's order also granted Undernehr twenty days to file a third-party complaint against the State of Arkansas or any of its political subdivisions. Undernehr then filed a third-party complaint against the appellees asking for reformation of his tax deed. Both appellees filed answers admitting that an error had been made and that Undernehr had received a tax deed with an incomplete description, and they asked that his petition for reformation be dismissed. Extensive evidence was taken from Ms. Sandlin regarding the tracing of the parcels of property from 1978 forward. At the close of the case the judge dismissed the petition for reformation and this appeal followed.

The record clearly shows that the description of the property which appellant purchased at the tax sale was defective: the description goes north then south along the same line; it does not return to the point of beginning and, therefore, does not "close"; it ends with "*Etc.*"; and it does not say that "Dickson" is a subdivision.

It has long been held that a tax sale which contains an

incomplete or defective description is void. In *Sutton* v. *Lee*, 181 Ark. 914, 28 S.W.2d 697 (1930), the appellant had ascertained that certain real estate was unoccupied and had been forfeited to the state for nonpayment of taxes for 1917 and 1921 under the indefinite description: "Parts of lots 3 and 4 in block 36 in the city of Hot Springs, Arkansas." The appellant had the land surveyed, purchased it at a sheriff's sale, and received a certificate which contained a definite description in keeping with the survey. Appellant then paid the purchase price, presented her certificate to the State Land Commissioner, and applied for a deed. The Land Commissioner refused to issue a deed containing the survey description, but he did issue a deed containing the description by which the land had been forfeited and conveyed to the state for nonpayment of taxes. Appellant took possession of the land and made valuable improvements on it. Appellee then filed an ejection action against appellant contending she held title to the property by inheritance. The suit was transferred to chancery by consent and a decree was rendered for the appellee for possession. On appeal the court stated:

> In the instant case the sale was unauthorized because the description of the land in the assessment and all proceedings involved was insufficient to identify it. It amounted to no description at all.
>
> Appellant also contends for a reversal of the decree because the certificate of purchase acquired under a compliance with the requirements of act 365 of the Acts of 1923, contained a definite and certain description of the real estate in controversy. This act only applies to purchasers of lots from the State to which it has acquired title. The State acquired no title to the real estate in controversy in the instant case as the assessment and forfeiture were void from the want of a description by which same might be located. The certificate was issued without authority, and could not and did not confer color of title to said real estate although definitely describing it.

181 Ark. at 918-19.

In *Gardner* v. *Johnson*, 220 Ark. 168, 246 S.W.2d 568 (1952), the court said:

The tax sale was invalid by reason of the defective description. The law is firmly established in this State that in order to make a valid sale of land for taxes, the land must be described with certainty upon the assessment rolls, and all subsequent proceedings for the enforcement of payment of taxes, *Wilkerson* v. *Johnston*, 211 Ark. 170, 200 S.W.2d 87. In that case the court said:

"It is well settled, not only by the decisions of this court, but by the adjudged cases in the courts of other states, as far as we can discover, that, in order to make a valid assessment and sale of land for taxes, the land must be described with certainty upon the assessment rolls and in all subsequent proceedings for the enforcement of payment of the tax. The chief reason for this requirement is that the owner may have information of the charge upon his property. It has sometimes been said that a description that would be sufficient in a conveyance between individuals would generally be sufficient in assessment for taxation. We do not, however, consider that a safe test. The description in tax proceedings must be such as will fully apprise the owner, without recourse to the superior knowledge peculiar to him as owner, that the particular tract of his land is sought to be charged with a tax lien. It must be such as will notify the public what lands are to be offered for sale in case the tax be not paid. In *Cooper* v. *Lee*, 59 Ark. 460, 27 S.W. 970, this court said: 'A description which is intelligible only to persons possessing more than the average intelligence, or the use and understanding of which is confined to the locality in which the land lies, is not sufficient.' These statements have been cited with approval in many subsequent cases."

220 Ark. at 171-72.

The law as set out in the above cases has recently been applied in the case of *Liggett* v. *Church of Nazarene*, 291 Ark. 298, 724 S.W.2d 170 (1987). Thus, it is clear that the appellant in the instant case acquired no title by the tax sale as it was void because of the incomplete description under which the land was

assessed and sold. It is also clear that appellant's tax deed, based upon the void tax sale, could not be reformed.

Appellant argues, however, that "Where separate defendant, Charlie Daniels, State Land Commissioner, admitted that legal description on limited warranty deed was inaccurate and further admitted that the deed should be reformed, it was error for the chancellor to dismiss the amended petition to reform deed." Appellant contends that there was a mutual mistake, and the tax deed should be reformed. He says there is no such thing as a legal description being bought or sold; rather, it is the underlying land that is bought or sold. He then quotes from several cases which hold that reformation of a deed can be had in cases of mutual mistake.

Appellant's argument ignores the law cited above which holds that the State acquires no title to real estate forfeited under an incomplete and defective description as the assessment and forfeiture in that situation are void. Therefore, reformation simply does not apply where land has been forfeited to and sold by the State under an incomplete and defective description.

Appellant is, however, entitled to have his money refunded. Ark. Code Ann. § 26-37-204(a) (1987) provides that "in the event the sale is set aside by legal action or if the land is proven to be nonexistent or double assessed, the purchaser shall be entitled to reimbursement of moneys paid." And Ark. Code Ann. § 26-37-206 (1987) states:

> If the taxes charged on any land or lot, or part thereof, are regularly paid, and the land or lot [is] erroneously returned delinquent and sold for taxes, the sale of the land or lot shall be void and the money paid by the purchaser at such a void sale shall be returned to him by the officer having the money in charge, on the order of the county court that the land was erroneously returned delinquent and sold for taxes.

The decision of the trial court is affirmed, but this case is remanded for the entry of an order for refund of the amount paid for the tax deed.

DANIELSON and ROGERS, JJ., agree.

211-A

___ S.W.2d ___

Petition for rehearing; denied.

*Mashburn & Taylor, by*: Timothy L. Brooks, *for appellant*.

No response.

MELVIN MAYFIELD, Judge. Appellant, Ben Undernehr, has filed a petition for rehearing contending that the opinion issued by this court on October 9, 1991, which affirmed the trial court decision and remanded the case for further proceedings, contains error of fact. Specifically, appellant alleges our opinion indicates that an error in the assessor's office "resulted in certain property being doubled taxed" and that "taxes on that property . . . were not delinquent." Appellant contends that according to the record it is "uncontroverted and unequivocal" that the property under question was not double taxed and that it was tax delinquent for the year 1980. The property involved was shown on the tax books as parcel 1594. Shirley Sandlin, Benton County Assessor, testified in part as follows:

> Q.   Now, if we can kind of cut to the chase on this case, I think we'll go through this. What is your position as it relates to the parcel number fifteen ninety-four and its availability or whether it was subject to being sold at a tax delinquent sale?
>
> . . . .
>
> A.   Okay. My position, I guess, would be the fact I felt like it was double assessed. I was not aware of the problem until it had sold. And in checking, I found out that that had been redrawn and was double assessed. The legal description was drawn out on other people's property entirely. (Tr. 59).
>
> . . . .

Q. When was it that the property became double assessed?

A. Nineteen Eighty. . . . (Tr. 60).

. . . .

Q. Okay. In Nineteen Eighty-one is where we have the second double assessment, if you will; is that correct?

A. Yes. Correct.

Q. The second double assessment is generated from the fact that the legal description was combined on a Warranty Deed into a single legal description instead of two separate legal descriptions?

A. Correct. (Tr. 63).

. . . .

Q. Would it be safe to say that if that faulty legal description has been superimposed on top of the correct legal description? (Tr. 81).

(At this point there was an objection and after discussion between the court and counsel, the witness answered the question.)

A. It does fall entirely on someone else's property.

Q. All right. And are there any delinquencies on that other piece of property?

A. No.

Q. No tax delinquencies on that piece of property? Okay. This incorrect legal description, was it ever given some type of parcel number?

A. It carried parcel number fifteen ninety-four. (Tr. 83).

While it is true that the trial judge stated, "I don't find a lot of evidence of double assessment here and because I don't, you know, I can't find that any piece of property has been assessed twice," the trial judge did not have the benefit of the written transcript before him as we do. The trial judge did say: "That piece of property ain't there. You didn't prove it's there. . . . If it's not there and it's not been delinquent, the state can't have it." We affirmed the trial judge because we thought his decision was right. After reading the transcript again, we are satisfied the record supports the statements in our original opinion that the property the appellant wants deeded to him was "double taxed" and that the taxes on that property "were not delinquent."

Appellant's petition for rehearing also contends that our opinion cited to "earlier" decisions which hold that a tax deed containing an incomplete or defective legal description is void, and appellant says that other case law is more closely on point and indicates that the description only needs to provide a "key" to the land in question. Appellant cites *Moseley* v. *Moon*, 201 Ark. 164, 144 S.W.2d 1089 (1940), as "more closely on point" and refers to language in that case which states that a description is sufficient if it "furnishes a key through which the land may be definitely located by proof *aliunde*." The paragraph which contains that language also states:

> Of course, the converse of this proposition is true; that is to say, extrinsic evidence is not admissible to cure or perfect a description which in itself is void and offers no key or suggestion by which the land may be located.

201 Ark. at 167.

In the instant case, we carefully considered the description in the deed appellant obtained from his purchase at the tax forfeiture sale. We cited cases which hold that the State acquires no title to real property "forfeited under an incomplete and defective description" because the assessment and forfeiture in

that situation are void. Therefore, we said that reformation simply does not apply where land has been forfeited to the State under an incomplete and defective description. This is as true when the State is the only defendant as when the owner of the land at the time of forfeiture is a party. The State simply cannot sell land it does not own, and a deed to such property cannot be reformed.

Moreover, we do not agree that the description in this case "furnishes a key through which the land may be definitely located by proof *aliunde.*" The problem with this description is greater than an error as to the beginning point (which is the error suggested by appellant). The description goes east from the point of beginning and then goes south and then west and, after going south and west again, it goes north but never returns to the point of beginning. It simply stops and states "Etc.," which leaves the rest of the description to the imagination of the reader. This description is equally as defective as the one held void in the case of *Gardner* v. *Johnson,* 200 Ark. 168, 246 S.W.2d 568 (1952), cited in our original opinion and that is a later case than the case of *Moseley* v. *Moon, supra,* relied upon by appellant.

The petition for rehearing is denied.